1  Donald P. Tremblay, Esq. (SBN 83109)
2  Katharine A. Tremblay, Esq. (SBN 284149)
   LAW OFFICES OF DONALD P. TREMBLAY
3  11622 El Camino Real, Suite 100
4  San Diego, CA 92103
   T: 858-792-7492
5  F: 858-792-7768
6  E: katharinetremblay@me.com

7  Elliott Jung (SBN: 285491)
8  Michael Hernandez (SBN: 292679)
   Adam Hepburn (SBN: 292736)
9  HEPBURN, HERNANDEZ & JUNG
10 TRIAL ATTORNEYS
   2121 Palomar Airport Road, Suite 300
11 Carlsbad, CA 92011
   T: 760-444-0301
12 F: 877-808-8348
13 ejung@hhjtrialattorneys.com
14 mhernandez@hhjtrialattorneys.com
   ahepburn@hhjtrialattorneys.com
15
16 Attorneys for Plaintiff
   DANIEL BRANNON WHITE
17

18          **UNITED STATES DISTRICT COURT**
19          **SOUTHERN DISTRICT OF CALIFORNIA**

20 DANIEL BRANNON WHITE, an individual;    Case No.: **'21 CV0242 W    DEB**

21                      Plaintiff,          **COMPLAINT FOR DAMAGES**

22          vs.

23 BLOCKCHAIN INDUSTRIES, INC., a          1. Whistleblower Retaliation in
   Nevada corporation; PAUL KIM, an           Violation of the Dodd-Frank Act
24 individual; JUSTIN SCHREIBER, an           [15 U.S.C. § 78u-6(h)];
   individual; ROBERT KALKSTEIN, an        2. Failure to Pay Minimum Wage
25 individual; ANDREAS TYPALDOS, an           [Cal. Lab. Code §§ 1194, 1197];
26 individual; JOSEPH SALVANI, an individual; 3. Failure to Pay Minimum Wage in
   PATRICK MOYNIHAN, an individual;           Violation of the FLSA
27 KEVIN HU, an individual; RICHARD           [29 U.S.C. §§ 201 *et seq.*];
28 KROMKA, an individual; MICHAEL CONN,

an individual; MAX ROBBINS, an individual; and DOES 1 through 25, inclusive;

Defendants.

4. Failure to Pay Wages Due Upon Time of Separation
   [Cal. Lab. Code §§ 201, 202];
5. Retaliation Based Upon Exercise of Protected Rights
   [Cal. Lab. Code § 98.6];
6. Whistleblower Retaliation
   [Cal. Lab. Code § 1102.5];
7. Retaliation in Violation of Wage Theft Protection Act
   [N.Y. Lab. Law § 215];
8. Wrongful Termination in Violation of the FLSA
   [29 U.S.C. §§ 215 *et seq.*];
9. Wrongful Termination in Violation of Public Policy;
10. Breach of Written Contract;
11. Breach of Covenant of Good Faith and Fair Dealing;
12. Intentional Interference with Contractual Relations; &
13. Civil Conspiracy to Commit Fraud.

**[JURY TRIAL DEMAND]**

COMES NOW PLAINTIFF, DANIEL BRANNON WHITE, demanding a jury trial, and hereby complains and alleges against Defendants as follows:

## **NATURE OF THE ACTION**

1.    This action arises under the whistleblower protection provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 15 U.S.C. § 17u-6 *et seq.* (hereinafter the "Dodd-Frank Act"). Plaintiff brings this action against his former employer for egregious violations of federal and state laws protecting employees from workplace discrimination and retaliation practices; ensuring prompt and accurate payment of wages;

1  and prohibiting against unlawful and fraudulent business practices. The jurisdiction of this

2  Court is invoked to secure protection of a redress deprivation of Plaintiff's rights secured

3  by federal laws, including the Dodd-Frank Act and the Fair Labor Standards Act of 1938,

4  29 U.S.C. § 201 *et seq*. (hereinafter the "FLSA"). This Court has ancillary jurisdiction over

5  Plaintiff's state law claims because they are sufficiently related to the federal claims herein.

6

7                                              **PARTIES**

8      2.    Plaintiff Daniel Brannon White ("Plaintiff" or "White) is a natural person who

9  is, and at all relevant times hereto was, a resident of the United States of America and a

10 domiciliary of the State of Mississippi.

11     3.    Plaintiff is informed and believes, and thereon alleges that, at all relevant

12 times hereto, Defendant Blockchain Industries, Inc. ("Defendant Blockchain") was and is

13 a corporation organized under the laws of the State of Nevada, with its principal place of

14 business located at 800 Third Avenue, Suite 2800, New York, New York, 10022. At all

15 relevant times hereto, Defendant Blockchain was and is a publicly traded corporation that

16 conducted, and continues to conduct, substantial business in the State of California.[1]

17     4.    Plaintiff is informed and believes, and thereon alleges that, at all relevant

18 times hereto, Defendant Paul Kim ("Defendant Kim") was and is an individual domiciled

19 in the State of California and acting as Chief Operating Office of Defendant Blockchain.

---

[1] As of the time of filing this Complaint, Defendant Blockchain's status is "FTB FORFEITED" according to the California Secretary of State Business Search database.

5.      Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Justin Schreiber ("Defendant Schreiber") was and is an individual domiciled in the United States Territory of Puerto Rico, with a residence located in the State of New Jersey. Defendant Schreiber is, upon Plaintiff's information and belief, a controlling shareholder of, and consultant to, Defendant Blockchain.

6.      Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Andreas Typaldos ("Defendant Typaldos") was and is an individual domiciled in the State of New York and is currently acting in the capacity as the President of Defendant Blockchain.

7.       Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Joseph Salvani ("Defendant Salvani") was and is an individual domiciled in the State of New York. Defendant Salvani is, upon Plaintiff's information and belief, a controlling shareholder of, and consultant to, Defendant Blockchain.

8.      Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Patrick Moynihan ("Defendant Moynihan") was and is an individual domiciled in the State of New York, with a residence in the State of California. Defendant Moynihan is the former Chief Executive Officer of Defendant Blockchain.

9.      Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Kevin Hu ("Defendant Hu") was and is an individual domiciled in the State of New York. Defendant Hu is, upon Plaintiff's information and belief, a former Director of Defendant Blockchain.

10.     Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Robert Kalkstein ("Defendant Kalkstein") was and is an individual domiciled in the State of New York. Defendant Kalkstein is, upon Plaintiff's information and belief, the Chief Financial Officer of Defendant Blockchain.

11.     Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Richard Kromka ("Defendant Kromka") was and is an individual domiciled in the State of California. Defendant Kromka is, upon Plaintiff's information and belief, a former Director of Defendant Blockchain.

12.     Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Michael Conn ("Defendant Conn") was and is an individual domiciled in the State of California. Defendant Conn is, upon Plaintiff's information and belief, a former Director of Defendant Blockchain.

13.     Plaintiff is informed and believes, and thereon alleges that, at all relevant times hereto, Defendant Max Robbins ("Defendant Robbins") was and is an individual domiciled in the United Kingdom. Defendant Robbins is, upon Plaintiff's information and belief, a former Director of Defendant Blockchain.

14.     Plaintiff is ignorant as to the true names and capacities of the defendants sued herein as DOES 1 through 25, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges that, each of these fictitiously named defendants is, in some manner, responsible for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were directly, proximately, and/or legally caused by

such defendants. Plaintiff will amend this Complaint to set forth the true names and capacities of the fictitiously named defendants when their identities become known to him.

15.    Plaintiff is informed and believes, and thereon alleges that, the fictitiously named defendants sued herein as DOES 1 through 25, and each of them, at all relevant times hereto, was the agent, employee, and/or representative of Defendant Blockchain, acting within the course and scope of their agency, employment, and/or representative relationship and/or capacity of Defendant Blockchain.

16.    Plaintiff is informed and believes, and thereon alleges that, each Defendant conspired with each other Defendant, and with the fictitiously named defendants sued herein as DOES 1 through 25, to commit each of the acts and/or omissions alleged herein.

17.    Plaintiff is informed and believes, and thereon alleges that, Defendants, and each of them, had actual or constructive knowledge of the wrongful acts and/or omissions alleged herein, and allowed, ratified, and/or condoned such wrongful acts and/or omissions.

## JURISDICTION AND VENUE

18.    This United States District Court, Southern District of California, has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff herein seeks redress for Defendants' violations arising under federal law. This Court also has pendant jurisdiction over state law claims under 28 U.S.C. § 1367. Plaintiff's state law claims have a common nucleus of applicable facts and are so related to those under which this Court has original jurisdiction that they form part of the same case or controversy.  Supplemental jurisdiction is thus proper over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in the United States District Court, Southern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.     Prior to commencing this action, and within the time provided by law, Plaintiff filed complaints with the California Department of Labor ("DOL") and the Securities and Exchange Commission ("SEC"), thereby having exhausted administrative remedies.

## SPECIFIC FACTUAL ALLEGATIONS

21.     In or around January of 2018, Defendant Blockchain formally hired Plaintiff to work in the job capacity of "Head of Security" for Defendant Blockchain.

22.     When originally hired by Defendant Blockchain, Plaintiff was classified as an independent contractor and was being paid a monthly "salary" for all he work performed.

23.     Plaintiff's primary job duties in his new position were to provide personal security details for executives and dignitaries associated with Defendant Blockchain's business operations, and to develop and supervise security operations for corporate events.

24.     Plaintiff took direction and instruction regarding his day-to-day job duties and responsibilities from Defendant Blockchain through its directors, officers, and agents.

25.     Throughout the course of his employment, Plaintiff performed his job duties in a capable and competent manner. Plaintiff also enjoyed his job and had no issues with the management of Defendant Blockchain at the outset of Plaintiff's employment there.

26.     Between January of 2018 and April of 2019, Plaintiff had to travel for work and performed his job duties for Defendant Blockchain in various locations, including, but not limited to, California, New York, Florida, Mississippi, Puerto Rico, and Japan.

27.     In or around March of 2018, Defendant Blockchain agreed to increase Plaintiff's "salary" to $120,000.00 per year and provide him other employment benefits.

28.     In June of 2018, Defendant Kalkstein, in an effort to conceal Plaintiff's misclassification as an independent contractor, notified Plaintiff that his employment status was being "re-classified" as a "W-2 employee" instead of his previous status as a "1099 independent contractor." Aside from Plaintiff's "re-classification," no other changes were made with regard Plaintiff's compensation, terms of employment, or day-to-day job duties.

29.     In June of 2018, no employment contract was presented to Plaintiff, and no contract regarding Plaintiff's change in employment status (i.e., from independent contractor to employee) was signed by either Plaintiff or agents of Defendant Blockchain.

30.     Plaintiff is, and at all relevant times hereto was, unaware of the existence of any employee handbook or other written employment policies that pertain to the terms and conditions of Plaintiff's employment with Defendant Blockchain.

31.     In or around approximately mid-October of 2018, Plaintiff was approached by Defendant Moynihan, then-Chief Executive Officer of Defendant Blockchain, who tasked Plaintiff with conducting an internal investigation of Defendant Blockchain's directors, officers, and shareholders for potential misconduct and criminal activity. At this point, Plaintiff had worked for Defendant Blockchain for approximately eleven months and

was promoted to the position of "Integrity Compliance Officer." In this role, Plaintiff was given authorization to investigate Defendant Blockchain's company officers and directors.

32.     Plaintiff began conducting his internal investigation, and over the course of the next six months, became aware of various misdeeds within the Defendant Blockchain.

33.     In or around November of 2018, Plaintiff determined through his investigation that Defendant Blockchain's capitalization table had been fraudulently tampered with.

34.     Defendant Blockchain's capitalization table illustrated that Mr. Murray Huberfeld was one of Defendant Blockchain's seed investors without any KYC (Know Your Customer) analysis or any AML (anti-money laundering) processes or procedures.

35.     Mr. Murray Huberfeld was the founding partners of Platinum Partners and is currently under Federal indictment in the State of New York for financial scams and fraud.

36.     Plaintiff further determined that Mr. Murray Huberfield's shares in Defendant Blockchain were transferred into a newly formed business entity named Lawrence Partners, LLC, which was set up under the name of Mr. Murray Huberfield's wife.

37.     Plaintiff investigated this matter and questioned then-Chief Financial Officer, Defendant Robert Kalkstein, and then-Chief Executive Officer, Defendant Patrick Moynihan, regarding Mr. Murray Huberfeld's investments into Defendant Blockchain.

38.     Defendant Kalkstein refused to communicate with Plaintiff regarding the aforementioned matter, thereby failing to comply with Plaintiff's internal investigation.

39.     Plaintiff also questioned Defendant Justin Schreiber regarding all AML and KYC documentation regarding the funds that were paid to Defendant Blockchain by Mr.

Murray Huberfeld in order to purchase stocks in Defendant Blockchain.

40.     Defendant Kalkstein and Defendant Schreiber refused to communicate with Plaintiff regarding the aforementioned matter, thereby failing to comply with Plaintiff's internal investigation. This impeded on Plaintiff's ability to properly execute his job duties.

41.     Plaintiff again inquired with Defendant Kalkstein and Defendant Schreiber regarding any documentation that pertained to the transfer of Mr. Murray Huberfeld's shares in Defendant Blockchain to an entity named Lawrence Partners, LLC.

42.     Defendant Kalkstein and Defendant Schreiber yet again refused to cooperate with Plaintiff's requests and failed to provide him with any financial records or other documentation regarding the transfer of shares.

43.     Plaintiff, however, possessed evidence that Defendant Kalkstein was aware, as early as January 11, 2018, that Mr. Murray Huberfeld was under indictment for fraud at the time that Defendant Kalkstein accepted investment funds from Mr. Murray Huberfeld.

44.     Plaintiff also possessed evidence that Defendant Kalkstein had knowledge of Mr. Murray Huberfeld's illegal and fraudulent acts at the time Defendant Kalkstein accepted funds from Mr. Murray Huberfeld in return for shares in Defendant Blockchain.

45.     Mr. Murray Huberfeld was eventually sentenced to two and a half years in prison for bribery.

46.     In or around November of 2018, Defendant Moynihan informed Plaintiff that Defendant Kalkstein, Defendant Schreiber, and Mr. Schreiber's wife (Olivia Funk) had back dated preferred stock issues in late of 2017 at the same time that Mr. Murray

Huberfeld's shares had disappeared from Defendant Blockchain's capitalization table.

47.    Plaintiff investigated this matter. He questioned Defendant Kalkstein and Defendant Schreiber—both of whom refused to comply with Plaintiff's investigation and failed to provide documentation regarding the issuance of shares in Defendant Blockchain.

48.    In or around November of 2018, Defendant Moynihan tasked Plaintiff with conducting a comprehensive background investigation on Mr. Douglas Cole and Mr. Douglas MacLellan, who were both nominated to the Board of Directors of Defendant Blockchain by Defendant Salvani and Defendant Schreiber.

49.    Plaintiff's investigation revealed that both Mr. Douglas Cole and Mr. Douglas MacLellan were also executives for a company named Oroplata (ORRP) that was part of a separate microcap fraud investigation.

50.    Plaintiff's investigation further revealed that both Defendant Salvani and Defendant Schreiber submitted fraudulent biographies on behalf of Mr. Cole and Mr. MacLellan to Defendant Blockchain during the Board of Directors nomination process.

51.    Plaintiff reported not only the fraudulent information contained in the biographies, but also Defendant Salvani and Defendant Schreiber's conduct and conflict of interests with Mr. Cole and Mr. MacLellan to Defendant Blockchain's Board of Directors.

52.    In or around December of 2018, Plaintiff informed both Defendant Moynihan and Defendant Kalkstein that any failure to cooperate with his internal investigation would require Plaintiff to report his findings to certain regulatory and enforcement agencies.

53.     On December 22, 2018, Defendant Kalkstein, Defendant Schreiber, and Defendant Salvani all sought the immediate termination of Plaintiff from his employment with Defendant Blockchain. That same day, Defendant Salvani messaged a shareholder of Defendant Blockchain, stating that he was going to "take Brennan [Plaintiff] down."

54.     On December 24, 2018, Defendant Salvani met with a shareholder of Defendant Blockchain and indicated yet again that he would "take him [Plaintiff] out."

55.     On or about January 23, 2019, Defendant Blockchain published a press release announcing a reverse merger with a company named BXA. The publication stated that BXA had deposited one million dollars into an escrow account to facilitate the merger.

56.     On January 30, 2019, Defendant Salvani met with two shareholders of Defendant Blockchain and informed them that Plaintiff will be "taken out." Upon information and belief, Defendant Salvani further informed these two shareholders that he intended to frustrate Defendant Blockchain's ability to use any of the stock it owned in "KPAY," which is a publicly traded company controlled by Defendant Salvani.

57.     On March 8, 2019, Plaintiff was contacted by Defendant Moynihan who urged Plaintiff not to file any type of complaints with any regulators or enforcement agencies.

58.     Defendant Moynihan further informed Plaintiff that the January 23, 2019 press release and subsequent filing with the SEC was false.  Defendant Moynihan also informed Plaintiff that BXA did not make a one-million-dollar escrow payment.

59.     Plaintiff immediately filed SEC complaints and claimed whistleblower status. Plaintiff notified Defendant Moynihan of the SEC complaint and his whistleblower status.

60.     Plaintiff filed a wage complaint with California's DLSE on March 24, 2019.

61.     On or about March 27, 2019, Defendant Blockchain, by and through Defendant Moynihan, offered Plaintiff a two-year employment contract ("Consulting Agreement") that could only be terminated for cause with a salary of $10,000.00 per month and an opportunity to obtain 300,000 shares of stock in Defendant Blockchain.

62.     On or about April 1, 2019, Plaintiff and Defendant Moynihan on behalf of Defendant Blockchain signed the Consulting Agreement.

63.     Upon information and belief, both Defendant Salvani and Defendant Schreiber became aware of the offer, and eventually, the signed Consulting Agreement.

64.     On April 5, 2019, Defendant Schreiber sent email correspondence to the entire Board of Directors of Defendant Blockchain demanding the immediate termination of Plaintiff in exchange for Defendant Schreiber's investors to fund Defendant Blockchain.

65.     It was Plaintiff's understanding that Defendant Schreiber did not wish to have Plaintiff reviewing actions of shareholders so that Defendant Schreiber could continue to violate state and federal statutes, rules, and regulations for his own personal benefit.

66.     On April 5, 2019, Plaintiff sent email correspondence to Defendant Schreiber and to the Board of Directors of Defendant Blockchain in order to provide notice that Plaintiff had filed formal complaints with the SEC.

67.     On April 12, 2019, Plaintiff was notified by the U.S. Department of Labor, via Agent Domingo Becerra, that Defendant Kalkstein admitted Defendant Blockchain owed Plaintiff at least $84,000.00 in past wages. Plaintiff understood Agent Becerra

provided Defendant Kalkstein approximately 72 hours to pay Plaintiff's wages in full.

68.    Defendant Kalkstein represented to Agent Becerra that Defendant Blockchain would pay Plaintiff all owed wages and associated penalties within 72 hours.

69.    Plaintiff's outstanding wages and penalties were never paid to Plaintiff.

70.    On April 15, 2019, Plaintiff is notified by Defendant Moynihan that the Board of Directors of Defendant Blockchain ordered him to terminate Plaintiff's employment.

71.    Defendant Moynihan indicated to Plaintiff that the Board of Directors ordered him to terminate Plaintiff's employment due to the direct demand of Defendant Schreiber.

72.    Defendant Schreiber promised the Board of Directors that he would fund Defendant Blockchain if Plaintiff's employment was terminated. Upon information and belief, Defendant Salvani joined Defendant Schreiber in demanding Plaintiff's immediate termination in exchange for Defendant Salvani's funding of Defendant Blockchain.

73.    Plaintiff was formally terminated by Defendant Blockchain on April 15, 2019.

74.    On that same date, April 15, 2019, Defendant Hu proceeded to delete Plaintiff's company email, despite having received a formal written demand from Plaintiff to preserve all electronically stored information, upon Plaintiff's information and belief.

75.    As a result of the misconduct that Plaintiff uncovered during his internal investigation, and due to Defendant Blockchain's improper employment practices, Plaintiff filed formal complaints with the Equal Employment Opportunity Commission ("EEOC") and the California Department of Industrial Relations ("DIR") on April 19, 2019.

76.   On June 2, 2019, Defendant Blockchain agreed to settle with Plaintiff in exchange for the release of Plaintiff's claims against the company.  Defendants drafted the "Settlement and Release Agreement" (the "Agreement") (Attached hereto as **Exhibit A**).

77.   The Agreement provided that Defendant Blockchain would pay Plaintiff a total of $100,000.00 as "negotiated severance payment" and provide a "common stock purchase warrant" for up to 350,000 shares in Defendant Blockchain at $0.20 per share.

78.   The aforementioned "common stock purchase warrant" was exercisable in three stages: (1) 116,667 shares were available for purchase immediately upon execution; (2) 116,677 additional shares were to be made available for purchase on the one-year anniversary of execution of the Agreement; and (3) a final 116,677 shares were to be available on the second anniversary of execution of the Agreement.

79.   The Agreement indicated that neither Defendant Schreiber, Defendant, Salvani, nor Defendant Moynihan were indemnified.

80.   Prior to signing the Agreement, Defendant Moynihan, Defendant Hu, and Defendant Kim encouraged Plaintiff to sign the Agreement by promising to help him with future employment and legal investing opportunities if Plaintiff signed the Agreement.

81.   Plaintiff executed the Agreement before a Notary Public on June 3, 2019.

82.   Defendant Kim, on behalf of Defendant Blockchain, executed the Agreement on June 7, 2019.

83.   Upon information and belief, Defendant Blockchain delivered the initial severance payment of $10,000.00 to Plaintiff in an effort to keep its true motives hidden.

84.     Defendant Blockchain subsequently violated the Agreement by not delivering to Plaintiff the remaining severance payment of $90,000.00 on their stated deadline.

85.     On or around July 5, 2019, approximately one month after the Agreement was executed, Plaintiff contacted Defendant Hu in order to inquire as to the status of payment.

86.     Defendant Hu informed Plaintiff that he believed Defendant Blockchain had no intention of fulfilling the Agreement it had entered into just a month prior. Defendant Hu urged Plaintiff not to name him as an individual defendant in any legal actions.

87.     Upon information and belief, Defendant Blockchain, by and through its Board of Directors, officers, agents, and/or employees never intended to honor the Agreement.

88.     On July 8, 2019, Defendant Hu stated to Plaintiff, "turns out you are right." Defendant Hu informed Plaintiff that he was correct regarding the violations reported to various regulatory and enforcement agencies prior to his termination.  Defendant Hu stated to Plaintiff, "I just can't believe my eyes.  I am sorry for not believing you earlier."

89.     Defendant Hu subsequently resigned from the Board of Directors of Defendant Blockchain amid growing dissatisfaction with the operation of the company.

90.     In or around early August of 2019, Defendant Hu again contacted Plaintiff and reiterated that Defendant Blockchain had no intention to honor the Agreement.

91.     On or around August 13, 2019, Defendant Schreiber wrote Plaintiff an email in which he indicated Defendant Blockchain did, in fact, intend to violate the Agreement.

92.     Surprised and confused by the aforementioned statements of Defendant Schreiber, Plaintiff proceeded to contact Defendant Typaldos, the new Chief Executive

Officer of Defendant Blockchain, and demanded a clear answer as to the Agreement.

93.    Defendant Typaldos replied that he was on vacation at the time and would respond when he was back in the office. Defendant Typaldos never responded to Plaintiff.

94.    Upon information and belief, Defendant Typaldos never intended to respond to Plaintiff, but knew of Defendant Blockchain's intentions to violate the Agreement.

95.    On September 2, 2019, Defendant Blockchain officially breached the Agreement by failing to pay Plaintiff the $90,000.00 negotiated severance pay by the mutually agreed upon September 2, 2019 deadline set forth in the Agreement.

96.    Had Plaintiff been payed the $100,000.00 of negotiated partial severance payment as outlined by the Agreement, he would have been able to exercise his option for stock purchase.

97.    Had the stock purchase option been exercised at the date of execution, as stated in the Agreement, Plaintiff would have acquired incredibly valuable shares in the company worth over $500,000.00 at fair market value at the time of purchase.

98.    Now, however, the price of stock in Defendant Blockchain as decreased significantly and Plaintiff lost the opportunity to take full advantage of his purchase option.

99.    Plaintiff has been denied his rightfully owed severance payment and other benefits of the Agreement since June of 2019. Plaintiff's income supported his wife and children—all of whom have suffered from Defendants' breach of the Agreement.

1
2
3
4

# FIRST CAUSE OF ACTION
## Retaliation in Violation of the Dodd-Frank Wall
## Street Reform and Consumer Protection Act of 2010
## [15 U.S.C. § 78u-6(h)]
## (Against Defendant Blockchain)

5
6
7

100.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

8
9

101.   At all relevant times hereto, Section 78u-6 of the Dodd-Frank Act was in full force and effect, and was binding upon Defendant Blockchain.

10
11
12
13
14
15
16
17
18
19
20

102.   The Dodd-Frank Act prohibits employers from discharging, demoting, suspending, threatening, harassing, directly or indirectly, or in any other manner discriminating against whistleblowers in the terms and conditions of employment because of any lawful act done by the whistleblower in providing information to the SEC, in initiating, testifying in, or assisting in any investigation or judicial or administrative act of the SEC based upon or related to such information, or in making disclosures that are required or protected under the Dodd-Frank Act or any other law, rule, or regulation subject to the jurisdiction of the SEC.

21
22
23

103.   Plaintiff is a whistleblower within the meaning of the Dodd-Frank Act, as evidenced by his conduct described above, and is thus protected by the Dodd-Frank Act.

24
25
26
27
28

104.   Defendant Blockchain harassed, threatened, discharged, and retaliated against Plaintiff after he made oral and written complaints to his employer, by and through its agents and employees, as well as to the SEC, regarding what he reasonably believed to be illegal or unlawful conduct in violation of state and federal statutes, rules, and regulations.

105.   Plaintiff is informed and believes, and thereon alleges that because of making complaints regarding Defendant Blockchain's illegal conduct and/or conduct that Plaintiff reasonably believed to be illegal, Plaintiff was wrongfully discharged from his employment and/or otherwise discriminated and retaliated against by Defendant Blockchain after Plaintiff had made the aforementioned disclosures and complaints about illegal conduct.

106.   Defendant Blockchain's conduct constituted a willful violation of the Dodd-Frank Act. Defendant Blockchain's violation of the Dodd-Frank Act caused Plaintiff harm.

107.   As a direct and proximate result of Defendant Blockchain's conduct, as alleged herein, Plaintiff has suffered, and will continue to suffer, actual and incidental financial losses, including, but not limited to, loss of salary and other earnings, employment benefits, and the intangible loss of employment related opportunities and damage to his professional reputation, all in an amount to be established according to proof at trial.

108.   As a direct and proximate result of Defendant Blockchain's conduct, as alleged herein, Plaintiff has suffered, and continues to suffer emotional distress, humiliation, mental anguish, and embarrassment, as well as the manifestation of associated physical symptoms, all to his damage, the full extent of which is uncertain at this time, but an amount within the jurisdiction of this Court to be established according to proof at trial.

109.   Plaintiff is informed and believes, and thereon alleges that, the unlawful conduct of Defendant Blockchain, as alleged herein, was outrageous and executed with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design, and purpose of harming Plaintiff. Plaintiff is thus entitled

1  to an award of punitive damages in an amount appropriate to punish Defendant Blockchain.

2  110.   Plaintiff has retained counsel in order to prosecute this action, and thus,

3

4  Plaintiff is entitled to recover reasonable attorneys' fees and costs related thereto.

5  **SECOND CAUSE OF ACTION**
**Failure to Pay Minimum Wage**
6  **[Cal. Lab. Code §§ 1194, 1197]**
**(Against Defendant Blockchain)**
7

8  111.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each

9

10  and every allegation in the preceding and subsequent paragraphs in this Complaint.

11  112.   The IWC applicable Wage Order and California Labor Code §§ 1197 and

12

13  1182.12 establish the right of employees to be paid minimum wages for all hours worked,

14  in amounts prescribed by law.

15  113.   California Labor Code §§1194(a) and 1194.2(a) provide that an employee

16

17  who has not been paid the legal minimum wage as required by Labor Code § 1197 may

18  recover the unpaid balance together with attorney's fees and costs of suit, as well as

19  liquidated damages in an amount equal to the unpaid wages and interests accrued thereon.

20  114.   Between approximately October of 2018 and April of 2019, Defendant

21

22  Blockchain failed to pay Plaintiff any wages for the work he did for Defendant Blockchain.

23  115.   Defendant Blockchain's failure to pay minimum wages violates California

24  Labor Code §§ 204, 210, 216, 558, 1182.12, 1197.1, 1198, and applicable Wage Orders.

25  116.   As a result of Defendant Blockchain's willful failure to pay wages, in addition

26

27  to such other damages and penalties as may properly be recovered herein, Plaintiff is

28

entitled to back pay, waiting time penalties, interest, costs, and attorneys' fees pursuant to California Labor Code §§ 206, 210, 218.5, 218.6, 558, 1194.2, 1197.1, 1197.2, and reasonable attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

117.   As a direct and proximate result of Defendant Blockchain's conduct, as alleged herein, Plaintiff has suffered, and will continue to suffer, substantial losses in earnings, employment benefits, employment opportunity, and other economic losses, all in an amount which is uncertain at this time but will be established according to proof at trial.

**THIRD CAUSE OF ACTION**
**Failure to Pay Minimum Wage -- FLSA Violation**
**[29 U.S.C. § 201 *et seq.*]**
**(Against Defendant Blockchain)**

118.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

119.   At all relevant times hereto, the FLSA was in full force and effect, and was binding upon Defendant Blockchain as a covered employer under the FLSA.

120.   The FLSA, at 29 U.S.C. §206(a)(1)(C), mandates that employers pay all employees engaged in commerce or in the production of goods for commerce, minimum wages for their work in an amount set by federal law. The FLSA, at 29 U.S.C. § 218(a), provides, in pertinent parts, that employers pay employees such minimum wage as established by state law, should it be higher than the federal minimum wage.

121.   Between approximately October of 2018 to April of 2019, Defendant Blockchain failed to pay Plaintiff any wages at all for the work he performed in his capacity

1  as an employee of Defendant Blockchain.

2

3      122.   By failing to compensate Plaintiff, Defendant Blockchain violated the FLSA.

4      123.   Defendant Blockchain willfully, intentionally, and recklessly failed to pay

5  Plaintiff the minimum wage for all hours worked. Defendant Blockchain's conduct thus

6  constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

7      124.   As a result of Defendant Blockchain's failure to pay Plaintiff minimum

8

9  wages, Plaintiff is entitled, pursuant to the FLSA at 29 U.S.C. § 216(b), to recover his

10  unpaid minimum wages, including interest thereon, in addition to liquidated damages,

11

12  penalties, and reasonable attorneys' fees and costs, in an amount according to proof at trial.

13                    **FOURTH CAUSE OF ACTION**
                   **Failure to Pay Wages Upon Separation**
14                      **[Cal. Lab. Code §§ 201, 202]**
                     **(Against Defendant Blockchain)**
15

16      125.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each

17  and every allegation in the preceding and subsequent paragraphs in this Complaint.

18

19      126.   At all relevant times hereto, California Labor Code §§ 201 and 202 were in

20  full force and effect and was binding upon Defendant Blockchain. California Labor Code

21
  §§ 201 and 202 mandate that an employer pay its employees all wages earned and unpaid
22

23  immediately upon discharge or within 72 hours of any given employee's resignation.

24      127.   Plaintiff, as alleged herein, performed work for Defendant Blockchain, in his

25

26  capacity as an employee of Defendant Blockchain until the date of his formal termination.

27      128.   Defendant Blockchain willfully failed and refused to pay Plaintiff all wages

28

earned and owed to him upon his termination from employment with Defendant Blockchain, which constitutes a violation of California Labor Code §§ 201 and 202.

129.   As a direct and proximate result of Defendants' unlawful conduct, as alleged herein, Plaintiff has sustained, and will continue to sustain, substantial economic damages, the full extent of which is uncertain at this time, but in an amount to be determined according to proof at trial. Plaintiff has sought to mitigate these damages.

130.   Pursuant to California Labor Code § 203, Plaintiff is entitled to receive, in addition to such other damages as may be properly recovered herein, penalty wages, from the date on which Plaintiff's earned and unpaid wages were due upon Plaintiff's termination from employment with Defendant Blockchain, up to a maximum of 30 days.

131.   Plaintiff is also entitled to recover the full amount of unpaid wages earned and owed to him, interest thereon, unpaid penalties, and an award for reasonable attorneys' fees and costs of suit, pursuant to California Labor Code §§ 218.5 and 218.6, respectively.

132.   As a result of Defendants' willful failure to pay wages, as alleged herein, Plaintiff is entitled to recover, in addition to such other damages and penalties as may be properly recovered herein, unpaid additional or premium wages, including interest thereon, reasonable attorneys' fees, and costs of suit pursuant to California Labor Code § 1194.

**FIFTH CAUSE OF ACTION**
**Retaliation Based on Exercise of Protected Rights**
**[Cal. Lab. Code § 98.6]**
**(Against All Defendants)**

133.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each

and every allegation in the preceding and subsequent paragraphs in this Complaint.

134.   At all relevant times hereto, California Labor Code § 98.6 was in full force and effect, and was binding upon Defendant Blockchain. California Labor Code § 98.6 prohibits employers from discriminating and/or retaliating against any employee for, *inter alia*, making a written or oral complaint that he is owed unpaid wages, or exercising on behalf of himself or others any rights afforded to him under the California Labor Code.

135.   From October of 2018 through April of 2019, Defendant Blockchain, by and through its Board of Directors and the individually named Defendants, failed to pay Plaintiff any wages for the work Plaintiff performed on behalf of Defendants.

136.   In March of 2019, Plaintiff filed a complaint of unpaid wages with the State of California DLSE, as was and is his right.

137.   On or around April 12, 2019, Defendant Kalkstein and Defendant Blockchain were made aware of Plaintiff's filing with the DLSE admitting that Defendants had, indeed, fail to pay any wages owed to Plaintiff for several months.

138.   Sometime between April 12, 2019 and April 15, 2019, Defendants, and each of them, voted to terminate Plaintiff for doing his job rather than pay him his owed wages.

139.   As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiff has sustained, and will continue to sustain, substantial losses in earnings, employment benefits, other economic losses, and the intangible loss of employment related opportunities and damage to his professional reputation, all in an amount which is uncertain at this time but will be established according to proof at trial.

140.   Plaintiff is informed and believes, and thereon alleges that, the unlawful conduct of Defendants, and each of them, as alleged herein, was outrageous and executed with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design, and purpose of harming Plaintiff. Consequently, Plaintiff is entitled to an award of punitive damages in an amount appropriate to punish Defendants.

## SIXTH CAUSE OF ACTION
### Whistleblower Retaliation
### [Cal. Lab. Code § 1102.5]
### (Against All Defendants)

141.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

142.   At all relevant times hereto, California Labor Code § 1102.5 was in full force and effect, and was binding upon Defendants, and each of them.

143.   California Labor Code § 1102.5 provides, in pertinent part, that neither an employer nor any person acting on behalf of the employer can retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, if the employee has reason to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

144.   During the course of his employment with Defendant Blockchain, Plaintiff complained of conduct he reasonably believed constituted a violation of state or federal

statute, or a violation of or noncompliance with a local, state, or federal rule or regulation. Plaintiff reported Defendants for, *inter alia*, non-payment of wages and potential fraud.

145.    Defendants unlawfully terminated Plaintiff in retaliation for his complaints of Defendants' unlawful conduct, as alleged herein.

146.    Plaintiff's complaints of Defendants' unlawful conduct were a contributory factor in Defendants' decision to terminate Plaintiff.

147.    As a direct and proximate result of Defendants' unlawful conduct, as alleged herein, Plaintiff has sustained, and will continue to sustain, substantial losses in earnings, employment benefits, other economic losses, and the intangible loss of employment related opportunities and damage to his professional reputation, all in an amount which is uncertain at this time, but within the jurisdiction of this Court, and will be established according to proof at trial. Plaintiff has sought to mitigate these damages.

148.    As a direct and proximate result of Defendant Blockchain's unlawful conduct, as alleged herein, Plaintiff has suffered, and continues to suffer, humiliation, reputational harm, emotional distress, and mental anguish, as well as the manifestation of associated physical symptoms, all to his damage, the full extent of which is uncertain at this time, but all in an amount to be established according to proof at trial.

149.    Plaintiff is informed and believes, and thereon alleges that, the unlawful conduct of Defendants, and each of them, as alleged herein, was outrageous and executed with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design, and purpose of harming Plaintiff. Consequently, Plaintiff

is entitled to an award of punitive damages in an amount appropriate to punish Defendants.

150.   In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to reasonable attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

**SEVENTH CAUSE OF ACTION**
**Retaliation in Violation of Wage Theft Protection Act**
**[N.Y. Lab. Law § 215]**
**(Against All Defendants)**

151.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

152.   Employers may not discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee who has complained to any person regarding a violation of New York's Wage Theft Prevention Act.

153.   As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out of pocket expenses in an amount to proof at the time of trial. As a further direct and proximate result of these Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, liquidated damages, attorneys' fees and costs of suit, and other prospective damages all in an amount to be established according to proof at trial.

154.   Plaintiff is informed and believes, and thereon alleges that, the unlawful conduct of Defendants, and each of them, as alleged herein, was outrageous and executed with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and

1    further, with the intent, design, and purpose of harming Plaintiff. Consequently, Plaintiff

2    is entitled to an award of punitive damages in an amount appropriate to punish Defendants.

3                            **EIGHTH CAUSE OF ACTION**
4                      **Wrongful Termination – FLSA Violation**
5                            **[29 U.S.C. § 215, *et seq*.]**
6                           **(Against All Defendants)**

7        155.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each

8    and every allegation in the preceding and subsequent paragraphs in this Complaint.

9        156.   At all relevant times hereto, the FLSA was in full force and effect, and was

10   binding upon Defendant Blockchain as a covered employer under the FLSA.

11       157.   The FLSA, at 29 U.S.C. §215(a)(3), provides, in pertinent part, that employers

12   from discharging, or discriminating against in any other manner, any employee because

13   such employee has filed a complaint or instituted or caused to be instituted any proceeding

14   related to the failure of an employer to, *inter alia*, pay wages in accordance with the FLSA.

15       158.   Between approximately October of 2018 to April of 2019, Defendant

16   Blockchain, as alleged herein, refused and failed to pay Plaintiff any wages at all for the

17   work he performed in his capacity as an employee of Defendant Blockchain.

18       159.   By failing to compensate Plaintiff, Defendant Blockchain violated the FLSA.

19       160.   Defendants, and each of them, knowingly, willfully, and intentionally failed

20   to compensate Plaintiff the applicable minimum hourly wage in violation of the FLSA at

21   29 U.S.C. § 206.

22       161.   As a result of Defendant Blockchain's failure to pay Plaintiff minimum

wages, Plaintiff is entitled, pursuant to the FLSA at 29 U.S.C. § 216(b), to recover his

unpaid minimum wages, including interest thereon, in addition to liquidated damages,

penalties, and reasonable attorneys' fees and costs, in an amount according to proof at trial.

### NINTH CAUSE OF ACTION
**Wrongful Termination in Violation of Public Policy**
**(Against Defendant Blockchain)**

162.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each

and every allegation in the preceding and subsequent paragraphs in this Complaint.

163.   It is a violation of public policy for an employer to fail to pay an employee

minimum wage and discharge the employee in retaliation against that employee for

reporting suspected violations of the law to a government or law enforcement agency.

164.   As alleged herein, from October of 2018 through April of 2019, Defendant

Blockchain, by and through its Board of Directors and the individually named Defendants,

failed to pay Plaintiff any wages for the work Plaintiff performed on behalf of Defendants.

165.   In March of 2019, Plaintiff filed a complaint of unpaid wages with the State

of California DLSE, as was and is his right.

166.   During the course of his employment with Defendant Blockchain, Plaintiff

complained of conduct he reasonably believed constituted a violation of state or federal

statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

167.   As alleged herein, Plaintiff reported Defendant Blockchain to certain

government agencies for, *inter alia*, non-payment of wages and potential fraud.

168.   Defendant Blockchain unlawfully terminated Plaintiff in retaliation for his

complaints of Defendant Blockchain's unlawful and fraudulent conduct, as alleged herein.

169.   Plaintiff's reports were a substantial motivating reason for his termination.

170.   As a result of his termination, Plaintiff was harmed.

171.   Defendant Blockchain's termination of Plaintiff was a substantial motivating reason in causing Plaintiff's harm.

172.   As a direct and proximate result of Defendant Blockchain's unlawful conduct, as alleged herein, Plaintiff has sustained, and will continue to sustain, substantial losses in earnings, employment benefits, other economic losses, and the intangible loss of employment related opportunities and damage to his professional reputation, all in an amount which is uncertain at this time, but within the jurisdiction of this Court, and will be established according to proof at trial. Plaintiff has sought to mitigate these damages.

173.   As a direct and proximate result of Defendant Blockchain's unlawful conduct, as alleged herein, Plaintiff has suffered, and continues to suffer, humiliation, reputational harm, emotional distress, and mental anguish, as well as the manifestation of associated physical symptoms, all to his damage, the full extent of which is uncertain at this time, but all in an amount to be established according to proof at trial.

174.   Plaintiff is informed and believes, and thereon alleges that, the unlawful conduct of Defendant Blockchain, as alleged herein, was outrageous and executed with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design, and purpose of harming Plaintiff. Plaintiff is thus entitled to an award of punitive damages in an amount appropriate to punish Defendant Blockchain.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TENTH CAUSE OF ACTION
### Breach of Written Contract
### (Against All Defendants)

175.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

176.   On or about June 4, 2019, Defendant Blockchain, by and through Defendant Kim executed the Agreement, thereby binding Defendants to the Agreement's terms.

177.   Plaintiff, also on or about June 3, 2019, executed the Agreement thereby binding himself to its terms and relying on Defendants' manifestations of compliance.

178.   Defendants materially breached the Agreement by failing to make payments as scheduled and for failing to offer the common stock purchase warrant, as promised.

179.   Plaintiff performed all, or substantially performed all, contractual obligations required of him pursuant to the mutually agreed upon terms of the Agreement, as set forth herein, or in the alternative, Plaintiff was excused from such performance.

180.   As a direct and proximate result of Defendants' breaches of contract, as alleged herein, Plaintiff has been harmed in that he has suffered substantial economic losses in an amount to be determined according to proof at trial, plus interest thereon.

## ELEVENTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

181.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

182.   Inherent in every contractual relationship and implied by law is a covenant of

good faith and fair dealing, which implies a promise that each party will refrain from doing anything to injure the other's right to receive the benefits of the agreement and which protects the parties' reasonable expectations.

183.    Defendant Blockchain, through the actions of its Board of Directors and each individual Defendant, breached the implied covenant of good faith and fair dealing by their conduct when Defendant Blockchain terminated Plaintiff's employment, failed to make the first payment outlined in the Agreement, and then again, each time Defendants failed to abide by any of the promises made in the Agreement.

184.    Contrary to the Consulting Agreement, Defendant Blockchain, by and through the individual Defendants, violated the terms of the Consulting Agreement when Defendant Blockchain terminated, what it called, Plaintiff's "at-will" employment, indicating that Defendants never intended to honor the Consulting Agreement.

185.    Contrary to the Agreement signed by Plaintiff and Defendant Blockchain, by and through the individual Defendants, Defendants never planned to abide by the Agreement, but rather, fraudulently induced Plaintiff to sign the Agreement by making false promises to Plaintiff that Defendants would abide by the Agreement.

186.    Plaintiff alleges on information and belief that Defendants made such false promises in an effort to injure the rights of the Plaintiff to receive the benefits of his past labor without compensation from the company and by extension avoiding costs for the company, its directors and its shareholders as well as potential avoid a lawsuit by running down the clock on the statute of limitations for any potential claim Plaintiff may have had

against Defendants.

187.   As a direct and proximate result of Defendants' breach of the contract and breach of the covenant of good faith and fair dealing, as alleged herein, Plaintiff has suffered substantial damages, including special, consequential damages in an amount which is uncertain at this time, but will be determined according to proof at trial.

### TWELFTH CAUSE OF ACTION
### Intentional Interference with Contractual Relations
### (Against Defendants Schreiber and Salvani)

188.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

189.   Defendant Schreiber and Defendant Salvani were aware of the Consulting Agreement offered to Plaintiff and signed by Plaintiff and Defendant Blockchain prior to Defendant Schreiber and Defendant Salvani demanding Plaintiff's termination in exchange for Defendants Schreiber and Defendant Salvani "funding" of Defendant Blockchain.

190.   In exchange for the financial assistance of Defendant Schreiber and Defendant Salvani, and as a result of Defendant Schreiber and Defendant Salvani's threats, Defendant Blockchain terminated Plaintiff's employment in violation of the Consulting Agreement.

191.   As a direct and proximate result of Defendant Schreiber and Defendant Salvani's conduct, as alleged herein, Plaintiff has suffered substantial damages, including special, consequential damages in an amount which is uncertain at this time, but will be determined according to proof at trial.

# THIRTEENTH CAUSE OF ACTION
## Fraud
### (Against All Defendants)

192.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

193.   At the time that Defendants, and each of them, collectively presented Plaintiff with the "Settlement and Release Agreement" (the "Agreement"), Plaintiff relied on the implied intent and promise of Defendants, and each of them, to abide the promise contained in the Agreement in order to determine whether or not to sign the Agreement.

194.   Plaintiff alleges on information and belief that Defendants, and each of them, knew that their promises regarding their intentions concerning the Agreement were false at the time Defendants made such promises.

195.   Plaintiff alleges on information and belief that Defendants, and each of them, made the false promises with the fraudulent intention to induce Plaintiff's reliance and his agreement to the proposed draft of the Agreement so as to avoid paying Plaintiff would he was rightfully owed as wages.

196.   Plaintiff reasonably relied on the false promises of Defendants, individually and in each of their roles as Directors of Defendant Blockchain, in signing the Agreement.

197.   Had Plaintiff known Defendants' true intentions and that their promises were false, he would not have agreed to the proposed Agreement and would not have signed it.

198.   As a direct and proximate result of Defendants' fraudulent conduct, as alleged herein, Plaintiff has suffered significant general, special, consequential and incidental

1    damages, all in an amount to be determined according to proof at time of trial.

2      199.   As a further direct and proximate result of Defendants' fraudulent conduct, as
3    alleged herein, Plaintiff has suffered, and continues to suffer, humiliation, reputational
4
5    harm, emotional distress, and mental anguish, as well as the manifestation of associated
6    physical symptoms, all to his damage, the full extent of which is uncertain at this time, but
7
8    all in an amount to be established according to proof at trial.

9      200.   Plaintiff is informed and believes, and thereon alleges that, the unlawful
10    conduct of Defendants, and each of them, as alleged herein, was outrageous and executed
11
12    with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and
13    further, with the intent, design, and purpose of harming Plaintiff. Consequently, Plaintiff
14
15    is entitled to an award of punitive damages in an amount appropriate to punish Defendants.

16                      **FOURTEENTH CAUSE OF ACTION**
                          **Civil Conspiracy to Commit Fraud**
17      **(Against Defendants Kim, Schreiber, Kalkstein, Typaldos, Salvani**
                **Moynihan, Hu, Kromka, Conn, Robins, and DOES 1-25)**
18

19      201.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each
20    and every allegation in the preceding and subsequent paragraphs in this Complaint.
21

22      202.   A civil conspiracy exists where a combination of two or more persons by some
23    concerted action to accomplish some unlawful purpose to the injury of another.

24      203.   Plaintiff alleges on information and belief that Defendants Kim, Schreiber,
25
26    Kalkstein, Typaldos, Salvani, Moynihan, Hu, Kromka, Conn, Robins, and DOES 1-25
27    knowingly and willfully conspired and agreed with each other to defraud Plaintiff, conceal
28

Defendants' intent to deprive Plaintiff of the benefit of the proposed Agreement and enable Defendants to reap the benefits of hundreds of hours of free labor from Plaintiff and to hopefully run out the clock on any statute of limitations for claims Plaintiff might have against Defendants.

204.   Defendants Kim, Schreiber, Kalkstein, Typaldos, Salvani, Moynihan, Hu, Kromka, Conn, Robins, and DOES 1-25 were aware of the plan to defraud Plaintiff by drafting, proposing, and entering into an Agreement with Plaintiff that Defendants never intended to abide by.

205.   Defendants Kim, Schreiber, Kalkstein, Typaldos, Salvani, Moynihan, Hu, Kromka, Conn, Robins, and DOES 1-25 agreed with the plan and agreed to conceal the plan from Plaintiff and assist each other in carrying out the tortious plan against Plaintiff.

206.   In furtherance of the conspiracy, Defendants Kim, Schreiber, Kalkstein, Typaldos, Salvani, Moynihan, Hu, Kromka, Conn, Robins, and DOES 1-25 engaged in the conduct set forth above in this Complaint including concealing the plan to defraud Plaintiff and induce him into signing the Agreement and continuing to violate the terms of the Agreement.

207.   Plaintiff alleges on information and belief that Defendants Kim, Schreiber, Kalkstein, Typaldos, Salvani, Moynihan, Hu, Kromka, Conn, Robins, and DOES 1-25 furthered the conspiracy by their cooperation with and/or encouragement of each other and/or by ratifying or adopting the aforementioned fraudulent conduct.

208.   Defendants, and each of them, agreed to the conspiracy and engaged in

conduct in in furtherance of the conspiracy for their own personal financial gain.

209. As a direct and proximate result of Defendants' wrongful conduct in furtherance of the conspiracy, as alleged herein, Plaintiff has suffered substantial general, special, consequential and incidental damages, in an amount which is uncertain at this time, but within the jurisdiction of this Court, and will be determined according to proof at trial.

210. As a further direct and proximate result of Defendants' unlawful conduct, as alleged herein, Plaintiff has suffered, and continues to suffer, humiliation, reputational harm, emotional distress, and mental anguish, as well as the manifestation of associated physical symptoms, all to his damage, the full extent of which is uncertain at this time, but within the jurisdiction of this Court, and will be established according to proof at trial.

211. Plaintiff is informed and believes, and thereon alleges that, the unlawful conduct of Defendants, and each of them, as alleged herein, was outrageous and executed with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design, and purpose of harming Plaintiff. Consequently, Plaintiff is entitled to an award of punitive damages in an amount appropriate to punish Defendants

212. Plaintiff further alleges, on information and belief that, each of the wrongful acts of the Defendant Blockchain, and/or its agents, as described herein above, was either performed, authorized, or ratified by an officer, director or managing agent of Defendant Blockchain. Consequently, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish and make an example of Defendant Blockchain.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For general and compensatory damages, including, but not limited to, back pay, front pay, lost employment benefits, and other monetary relief, in an amount to be determined according to proof at trial;

2. For special damages in an amount to be determined according to proof at trial;

3. For punitive damages in an amount appropriate to make an example of, and punish, Defendants, and to deter future similar misconduct;

4. For mental and emotional distress damages;

5. For all civil penalties awardable;

6. For costs of suit incurred, including attorneys' fees as permitted by law;

7. For an award of interest, including prejudgment interest, at the legal rate as permitted by law; and

8. For such other and further relief as the Court deems just and proper.

Date:  February 9, 2021                    Respectfully submitted,

                                           **HEPBURN, HERNANDEZ & JUNG
                                           TRIAL ATTORNEYS**

                                           */s/ Elliott H. Jung*
                                            Elliott H. Jung, Esq.

1

**LAW OFFICES OF DONALD P. TREMBLAY**

2

*/s/ Katharine Tremblay Beck*

3

Katharine Tremblay Beck, Esq.

4

Attorneys for Plaintiff

5

DANIEL BRANNON WHITE

6

7

**DEMAND FOR JURY TRIAL**

8

9

　　Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial

10

by jury for all claims so triable.

11

12

Date:  February 9, 2021                                Respectfully submitted,

13

14

**HEPBURN, HERNANDEZ & JUNG**
**TRIAL ATTORNEYS**

15

16

*/s/ Elliott H. Jung*

17

 Elliott H. Jung, Esq.

18

**LAW OFFICES OF DONALD P. TREMBLAY**

19

20

*/s/ Katharine Tremblay Beck*

21

Katharine Tremblay Beck, Esq.

22

Attorneys for Plaintiff

DANIEL BRANNON WHITE

23

24

25

26

27

28