UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BRANNON WHITE,<br><br>                          Plaintiff,<br><br>  v.<br><br>BLOCKCHAIN INDUSTRIES, INC., et al.,<br><br>                          Defendants. | Case No.:  3:21-cv-00242-W (DEB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART FIRST AMENDED MOTION TO DISMISS [DOC. 37]** |

Pending before the Court is defendant Robert Kalkstein's ("Defendant Kalkstein") "First Amended Motion to Dismiss Complaint" with prejudice under Federal Rule of Procedure 12(b)(6).  ([Doc. 37], "Amended MTD").  Plaintiff Daniel Brannon White ("Plaintiff") opposes.  ([Doc. 38], "Opposition".)  Defendant Kalkstein has replied. ([Doc. 42], "Reply.")

The Court decides the matter on the papers submitted and without oral argument. *See* CivLR 7.1(d)(1).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Amended MTD.

I.   **BACKGROUND**

As alleged, non-moving defendant Blockchain Industries, Inc. ("Blockchain") hired Plaintiff in or around January 2018 to be Blockchain's "Head of Security."  ([Doc.

1], "Complaint" at ¶ 21.)  In relevant part, Plaintiff alleges that Defendant Kalkstein is the "Chief Financial Officer of Defendant Blockchain." (*Id*. at 10.)

According to the Complaint, the then CEO of Blockchain Patrick Moynihan (a non-moving defendant) tasked Plaintiff in mid-October 2018 with conducting an internal investigation into Blockchain's directors, officers, and shareholders for "potential misconduct and criminal activity" and promoted Plaintiff to "Integrity Compliance Officer." (*Id*. at ¶ 31.)  Ultimately, Plaintiff alleges that his investigation discovered wrongdoings by a number of Blockchain's directors, officers, and shareholders— including Defendant Kalkstein. (*Id*. at ¶¶ 38-51.)  In or around December 2018, Plaintiff alleges he informed CEO Patrick Moynihan and Defendant Kalkstein that he would have to report the findings of his investigation to certain regulatory and enforcement agencies. (*Id*. at ¶ 52.)

Plaintiff alleges that he went on to file a complaint with the SEC regarding Blockchain and his investigation, as well a complaint for unpaid wages with California's Division of Labor Standards Enforcement ("DLSE") against Blockchain. (*Id*. at ¶¶ 59-60.)  At which point, between April 12 and April 15, 2019, Plaintiff alleges that Blockchain's board of directors, including Defendant Kalkstein, "voted to terminate Plaintiff." (*Id*. at ¶¶ 70-73, 138.)

On April 19, 2019, Plaintiff filed formal complaints with the Equal Employment Opportunity Commission ("EEOC") and California Department of Industrial Relations ("DIR"). (*Id*. at ¶ 75.)  Then, on June 2, 2019, Plaintiff agreed to release all claims against Blockchain pursuant to a settlement agreement ("Settlement Agreement"). (*Complaint* at ¶ 76.)  However, Plaintiff alleges that Blockchain ultimately failed to deliver the full consideration required by the settlement agreement, and he thus brought the current action on February 2, 2019 against Blockchain and a number of its alleged directors, officers, and shareholders.  (*See Complaint* at ¶ 84.)

On October 29, 2021, the Court granted Blockchain's request to stay this case while Blockchain was in receivership in Nevada. ([Doc. 16], "Order Granting Motion to

Stay Proceedings".) On March 21, 2023, the Court granted Plaintiff's request to lift the stay after Blockchain's receivership was completed. ([Doc. 23], "Order Granting Motion to Lift Stay".)

In relevant part, Plaintiff has alleged eight causes of action against Defendant Kalkstein—including retaliation based on exercise of protected rights under California Labor Code § 98.6; whistleblower retaliation under California Labor Code § 1102.5; retaliation in violation of New York Labor Law § 215; wrongful termination under the FLSA; wrongful termination "in violation of public policy"; breach of contract; breach of the covenant of good faith and fair dealings; fraud; and conspiracy to commit fraud. (*Complaint* at ¶¶ 133-212.)

On June 23, 2023, Defendant Kalkstein—who is proceeding *pro se*—filed his original motion to dismiss, which was two pages long and asserted only factual arguments that the Court cannot consider at the pleading stage. ([Doc. 32], "Kalkstein's Original MTD"). After the Court denied Defendant Kalkstein's Original MTD, he filed his Amended MTD under Federal Rule of Procedure 12(b)(6)—in which Defendant Kalkstein does make some legal arguments. (*Amended MTD*.) In support of his Amended MTD, Defendant Kalkstein has attached several exhibits, including a "Consulting Agreement" between Defendant Kalkstein and Blockchain. (*Amended MTD* at 23-34).

II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6) ("Rule 12"). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) ("Rule 8"). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). While well-pled allegations in the complaint are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, "when the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), '[r]eview is limited to the complaint.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted).

However, under Federal Rule of Evidence 201(b), courts may take judicial notice of undisputed facts that are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). However, whether a source's accuracy "cannot reasonably be questioned," is "only part of the inquiry." *Khoja*, 899 F.3d at 999. The Court must also assess whether the facts at issue "can be accurately and readily determined" from the source. *Id*. Thus, "[i]t is improper to judicially notice a [document] when the substance of the [document] 'is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes.'" *Id*. at 1000.

### III. DISCUSSION

#### A. The Court Will Decide the Amended MTD on the Merits

Plaintiff urges the Court to deny the entire Amended MTD reasoning that the grounds upon which Defendant Kalkstein now moves to dismiss the Complaint were

available to him when he filed the Original MTD.  (*Opposition* at 11.)  To support this, Plaintiff points to Federal Rule of Civil Procedure 12(g)(2), which states that "[e]xcept as provided by Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  However, Federal Rule of Civil Procedure 12(h)(2) then goes on to say that "[f]ailure to state a claim upon which relief can be granted . . . may be raised by a motion under Rule 12(c)."

The Ninth Circuit has interpreted this to mean that while Rule 12(g)(2) technically "provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)," the Circuit will be "very forgiving of a district court[s]" who decide later-filed 12(b)(6) motions on their merits since the party could simply move to dismiss under Rule 12(c) once the pleadings close and "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to . . . [answer and then file a Rule 12(c) motion on the same grounds] can produce unnecessary and costly delays, contrary to the direction of Rule 1."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), aff'd sub nom. *Apple Inc. v. Pepper*, 587 U.S. 273 (2019) (citations omitted).

Here, it is true that Defendant Kalkstein's two-page Original MTD did not contain any of the legal arguments now contained in his Amended MTD.  However, upon the Court's denial of the Original MTD, Defendant Kalkstein (who represents that he "cannot afford an attorney") seems to have educated himself on how to properly file a motion to dismiss and promptly filed the Amended MTD.  While the Court could deny the Amended MTD, require Defendant Kalkstein to Answer the Complaint, and then have him refile his Amended MTD as a Rule 12(c) motion; the Court will instead simply decide the Amended MTD on the merits in the interest of judicial efficiency and considering Defendant Kalkstein's *pro se* status.  See Fed. R. Civ. P. 1 ("These rules  . . . . should be construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceedings.").

### B.     The Amended MTD is Denied With Respect to Claims 5 and 8 Because the Court Cannot Consider Extrinsic Evidence at This Stage

Defendant Kalkstein moves to dismiss Claim 5—retaliation based on exercise of protected rights under California Labor Code § 98.6—reasoning that he could not have retaliated against Plaintiff because he had no authority to fire Plaintiff. (*Amended MTD* at 10-11.) To support this contention, Defendant Kalkstein points to a "Consulting Agreement" between himself and Blockchain from December 2017, which purportedly shows that Defendant Kalkstein was a "Independent Contractor" who was "not authorized to bind [Blockchain] to any liability or obligation." (*Id*. at 26.)

Similarly, Defendant Kalkstein moves to dismiss Claim 8—wrongful termination under the FLSA (29 U.S.C. § 215, et seq.)—also on the grounds that he had no authority to fire Plaintiff, as evidenced by the terms of Defendant Kalkstein's "Consulting Agreement" with Blockchain. (*Id*. at 14.)

Defendant Kalkstein's argument may ultimately prove correct; however it necessarily relies upon facts outside the Complaint—namely the "Consulting Agreement" attached to the Amended MTD—that the Court cannot consider at this stage. As discussed above, the Court at this stage must assume the allegations in the Complaint to be true and the Court's "[r]eview is limited to the complaint." *Lee*, 250 F.3d at 688. While the Court is willing to construe Defendant Kalkstein attaching the "Consulting Agreement" to the Amended MTD as a request for judicial notice, the "Consulting Agreement" does not appear to be a document that is (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." And even if it were, it is not clear from the face of the "Consulting Agreement" that Defendant Kalkstein definitively could not have been involved in Plaintiff's firing.

Accordingly, the Amended MTD is denied with respect to Claims 5 and 8.

### C. Plaintiff Has Sufficiently Alleged a Violation of New York Labor Law § 215 (Claim 7)

Next, Defendant Kalkstein argues that Claim 7—retaliation under New York Labor Law § 215—should be dismissed because: (1) Plaintiff is not subject to New York labor laws since he is "domiciled in Mississippi" and "does not allege that he worked in New York"; and (2) Plaintiff did not complain of a New York labor law violation before suing—a step Defendant Kalkstein argues is required under the statute. (*Amended MTD* at 13-14.)

First, a survey of New York law makes clear that the protections of its labor laws apply to out of state workers when their work takes them into the state of New York. *Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 469 (S.D.N.Y. 2021) (applying New York wage and hour laws to New Jersey based construction workers for days worked on the New York side on the George Washington Bridge). And the Complaint does allege that "[b]etween January of 2018 and 2019, Plaintiff had to travel for work and perform his duties for Defendant Blockchain in various locations, including . . . New York." (*Complaint* at ¶ 26.) Accordingly, Plaintiff was covered by New York labor laws on occasions when he travelled to New York. To the extent that the Complaint is alleging that Plaintiff was retaliated against for complaining about violations of New York labor laws (e.g., wage and hour violations) on occasions when Plaintiff travelled to New York for work, Claim 7 survives.

Second, while Defendant Kalkstein is correct that New York Labor Law § 215 requires Plaintiff to have engaged in some sort of protected activity (*i.e.*, complaining to an employer about labor law violations) before being allegedly retaliated against, Defendant Kalkstein overstates how formal and specific Plaintiff's complaint to Blockchain needs to have been. (*See Amended MTD* at 13-14.) Indeed, the court in *Cortese* held that a New Jersey based construction worker sending a text message to his employer that it "was unfair for him to be paid a lower rate than" the New York based construction workers also working on the George Washington bridge was sufficient to

constitute a "protected activity" despite the employee's complaint to his employer being "generic, relating broadly to his rate of pay, and not specifically to the work he performed on the New York side of the bridge." 544 F. Supp. 3d at 470-71. Surveying relevant New York and Second Circuit caselaw, the *Cortese* court ultimately concluded that an employee's complaint to his employer constitutes a "protected activity" under New York Labor Law § 215 so long as a "colorable" labor law violation is "encompassed" somewhere within the employee's complaint to the employer. *Id*. at 471.

Here, Plaintiff points to his allegations in the Complaint that shortly before being fired, he filed complaint with the DLSE about Defendant Kalkstein (along with other defendants) failing to pay him wages between October 2018 and April of 2019—which does overlap by a few months with the January of 2018 to January of 2019 period in which Plaintiff claims he traveled to New York for work. (*Opposition* at 21; *see Complaint* at ¶¶ 26, 60, 135-37). And Plaintiff alleges that Defendant Kalkstein was made aware of this DLSE complaint prior to Plaintiff's firing. (*Complaint* at ¶¶ 67-68, 136-37.) To the extent that facts constituting a "colorable" New York labor law violations were included in the DLSE complaint, Plaintiff had engaged in a "protected activity" for purposes of New York Labor Law § 215 and the Amended MTD is denied with respect to Claim 7.

### D. Claim 6 Is Dismissed Because California Labor Code Section 1102.5 Does Not Apply to Individual Defendant's

Defendant Kalkstein also moves to dismiss Claim 6—violation of California Labor Code section 1102.5—on the grounds that it does not apply to individual defendants like himself. (*Amended MTD* at 12.) Plaintiff does not oppose. (*See generally, Opposition*.)

And nor could he, given that a review of the relevant caselaw reveals that both state and federal courts in California have consistently held that there is no individual liability under California Labor Code section 1102.5—only liability for employers. *E.g.*, *United States ex rel. Lupo v. Quality Assurance Servs., Inc*., 242 F. Supp. 3d 1020, 1030 (S.D. Cal. 2017) (collecting case).

Accordingly, the Claim 6 is dismissed against Defendant Kalkstein in his individual capacity.

### E. Claims 10 and 11 Are Dismissed

Defendant Kalkstein next moves to dismiss Claims 10 and 11—breach of the Settlement Agreement and breach of the covenant of good faith and fair dealings in connection with the Settlement Agreement—on the grounds that he was not a signatory to the Settlement Agreement. (*Amended MTD* at 16-18.) Indeed, the copy of the alleged Settlement Agreement that Plaintiff has attached to the Complaint shows that it was an agreement between Plaintiff and Blockchain, not Defendant Kalkstein. ([Doc. 1-2], at 10-11.) Once again, Plaintiff does not oppose. (*See generally, Opposition*.)

For these reasons, the Court dismisses Claims 10 and 11 against Defendant Kalkstein.

### F. Claims 13 and 14 Are Dismissed

Lastly, Defendant Kalkstein agues that Claims 13 and 14—fraud and civil conspiracy to commit fraud—should be dismissed because the Complaint fails to allege any specific fraudulent conduct by Defendant Kalkstein and instead merely combines Defendant Kalkstein in with all the other defendants. (*Amended MTD* at 18-20.) Plaintiff does not oppose this, and instead asks the Court for leave to file an amended complaint to plead additional facts regarding Defendant Kalkstein's allegedly fraudulent conduct. (*Opposition* at 29.)

Accordingly, the Court grants the Amended MTD and dismisses Claims 13 and 14 against Defendant Kalkstein. The issue of leave to amend is addressed below.

### G. Leave to Amend

In his Opposition, Plaintiff asks the Court for leave to amend the Complaint if/to the extent that the Amended MTD is granted. (*Opposition* at 29.) Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Furthermore, leave to amend "should be granted with 'extreme liberty'" and

only be denied when "it is clear . . . that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

Considering this circuit's preference for permitting amendment where not futile, the Court cannot conclude that Plaintiff could not possibly allege additional, specific facts to state valid fraud and civil conspiracy claims (Claims 13 and 14) against Defendant Kalkstein.  Accordingly, the Court grants leave to amend the fraud and civil conspiracy claims (Claims 13 and 14) against the Defendant Kalkstein.  However, amendment would be futile as to the Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims (Claims 10 and 11) against Defendant Kalkstein as Plaintiff fails to identify in has Opposition any additional facts that could be pled to show that Defendant Kalkstein was party to the Settlement Agreement.  Similarly, Plaintiff's California Labor Code section 1102.5 claim (Claim 6) against Defendant Kalkstein cannot be saved by amendment because no additional allegations could change the fact that section 1102.5 does not allow for individual liability.

## IV.  CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Amended MTD [37].  Claims 6, 10, and 11 are dismissed with respect to Defendant Kalkstein **WITHOUT LEAVE TO AMEND**.  Claims 13 and 14 are dismissed with respect to Defendant Kalkstein **WITH LEAVE TO AMEND**.  Claims 5, 7, and 8 remain against Defendant Kalkstein.

Plaintiff may file a first amended complaint on or before September 9, 2024.

**IT IS SO ORDERED.**

Dated:  August 21, 2024

_____
Hon. Thomas J. Whelan
United States District Judge